**Blank Rome LLP**
Todd M. Malynn (SBN: 181595)
2029 Century Park East
6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile:  424.239.3434
todd.malynn@blankrome.com

Jonathan W.S. England (*Pro Hac Vice* to be filed)
jonathan.england@blankrome.com
1825 Eye Street, NW
Washington, DC 20006
Telephone: 202.420.2200
Facsimile:  202.420.2201

Attorneys for Plaintiffs
NAIL ALLIANCE, LLC AND
NAIL ALLIANCE – NORTH
AMERICA, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAIL ALLIANCE, LLC and NAIL ALLIANCE – NORTH AMERICA, INC., inclusive,<br><br>Plaintiffs,<br><br>vs.<br><br>VISHINE ENTERPRISE LIMITED and DOES 1-10, inclusive<br><br>Defendant. | Case No. 22-937<br><br>**COMPLAINT FOR:**<br><br>**(1) TRADE DRESS INFRINGEMENT**<br><br>**(2) FALSE DESIGNATION OF ORIGIN**<br><br>**(3) DESIGN PATENT INFRINGEMENT**<br><br>**(4) UTILITY PATENT INFRINGEMENT**<br><br>**(5) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)**<br><br>**JURY TRIAL DEMANDED** |

---

**PLAINTIFFS NAIL ALLIANCE, LLC AND NAIL ALLIANCE – NORTH AMERICA, INC. COMPLAINT**

1
2
3
4
5
6
7

Plaintiffs Nail Alliance, LLC and Nail Alliance – North America, Inc. (collectively, "Plaintiffs" or "Nail Alliance"), by and through counsel, hereby file this Complaint for trade dress infringement, false designation of origin, patent infringement, and unfair competition against Defendants Vishine Enterprise Limited ("Vishine" or "Defendant") and Does 1-10 (collectively with Vishine, "Defendants"), and allege on knowledge as to Plaintiffs' actions, and otherwise upon information and belief, as follows:

8

**PARTIES**

9
10
11
12
13
14
15
16

1.    Plaintiff Nail Alliance, LLC is a limited liability corporation duly organized under the laws of Delaware, with its principal place of business in Gladstone, Missouri.  Nail Alliance LLC owns and holds intellectual property rights recognized and protected by U.S. Trademark Registration Nos. 3,857,946, 4,096,115, 4,473,557, and 4,473,558, U.S. Patent No. D656,824 to a Bottle with Transparent Window, and U.S. Patent No. 8,528,739 entitled Package for Colored Products.  Nail Alliance, LLC licenses use of these patents and trademarks to Nail Alliance – North America, Inc.

17
18
19
20
21
22
23
24

2.    Nail Alliance – North America, Inc., formally known as Hand & Nail Harmony, Inc., is a corporation duly organized under the laws of the State of California, with its principal place of business in Brea, California.  Nail Alliance – North America, Inc. manufactures, distributes, and sells high-quality, soak-off gel polishes and other nail products, accessories, and preparations under the patents and trademarks licensed from Nail Alliance, LLC, through its qualified distributors, and sells its products licensed under the patents and trademarks of Nail Alliance, LLC to stores, boutiques, and salons in this Judicial District and throughout the world.

25
26
27

3.    On information and belief, Vishine is a limited company organized under the laws of China, doing business at Unit B, Neich Tower, 128 Gloucester Rd., Wanchai, Hong Kong.  Defendant manufactures, distributes, markets, sells,

28

offers to sell and/or ships look-a-like, infringing products over the Internet to consumers in California and in other states.

4.     Does 1-10 are unknown to Plaintiffs, who therefore sues said defendants by such fictitious name.  Does 1-10 aid and abet Defendant's infringing conduct designed to harm Nail Alliance in California, and in conspiracy with Defendant manufacture, distribute, market, sell, offer to sell and ship Defendant's look-a-like, infringing products over the Internet to consumers in California and in other states. Does 1-10 include but are not limited to persons using ever-changing fictious names to sell Defendant's products over Internet marketplaces.  Plaintiffs will seek leave of Court to amend this Complaint to insert the true name and capacities of said defendants when the same has been ascertained.  Plaintiffs, upon information and belief, alleges that Does 1-10 are each legally responsible with Defendant in some manner for the events and happenings herein alleged and that Plaintiffs' damages as alleged herein were proximately caused by Defendants, and each of them.

## JURISDICTION AND VENUE

5.     This is a civil action for patent infringement, trade dress infringement, and unfair competition in violation of the laws of the United States and the State of California.  Plaintiffs seek an injunction and an award of profits, damages, and related relief.

6.     This Court federal question jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331 and 1338 and also because the action presents a federal question under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and the Patent Act, 35 U.S.C. § 271.  This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. §§ 1338(b) and 1367(a).  This Court may assume jurisdiction over the state law claims as the federal and state claims are both based on the same operative facts, and judicial economy, convenience, and fairness to the parties will result in such assumption of jurisdiction.

7.     Defendants are subject to this Court's specific personal jurisdiction pursuant to due process and the California's long arm statute, Code of Civil Procedure § 410, which authorizes California courts to exercise jurisdiction on any basis that is not inconsistent with the Constitution of the United States or the Constitution of California.  *See, e.g.*, *Luberski, Inc. v. Oleficial F.LLI Amato S.R.L.*, 171 Cal. App. 4th 409, 413 (2009).

8.     Among other reasons, Defendants are subject to personal jurisdiction in California because of their purposeful availment of the benefits and protections of California and its laws, and because this lawsuit arises directly out of Defendants' substantial business contacts within the state of California and within this judicial district.  Among other contacts, Defendants sell and ship Defendant's infringing products to consumers in California or are otherwise responsible for Defendant's wrongful contact directed towards Californians and harming Nail Alliance in California.  Defendant's infringing products are available for purchase throughout this Judicial District to consumers in California, including nail salons and through e-commerce stores that are accessible in California, such as, Amazon.com, Walmart.com, eBay.com, and Alibaba.com.  As an example, Plaintiffs purchased a sample of the infringing Vishine gel polish in Brea, California.

9.     In addition, Defendants have committed and are committing acts of direct infringement in this district, including currently and in the past using, importing, selling, and/or offering for sale the products accused of infringement in this District, such that it would be reasonable for this Court to exercise jurisdiction over Defendants with respect to a claim of trademark and patent infringement and unfair competition which is directly related to each Defendants' commercial activities in this State and in this Judicial District.

10.     This Court has personal jurisdiction over Defendants because Defendants, *inter alia*, transacts business in the State of California and within this District, engages in a persistent course of conduct in the State of California and

3

within this District, and expects, or should reasonably expect, its act to have legal consequences in the State of California.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since, upon information and belief, Defendants are foreign persons or entities engaged in infringing activities and are causing harm within the district by advertising, offering to sell and/or selling infringing products to consumers in California, including through e-commerce stores that are accessible in California.

12.    Venue is proper in this district under 28 U.S.C. § 1400(b).

13.    The Federal Circuit has ruled in *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018) that the Supreme Court's ruling in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1514 (2017) did not apply to a foreign (alien) corporation.  In doing so, the Federal Circuit reaffirmed the longstanding rule that suits against a foreign (alien) defendant "are wholly outside the operation of all the federal venue laws, general and specific."

14.    As a result of the foregoing, each foreign (alien) corporation is "present" in this Judicial District and can be sued in this Judicial District.

15.    This Judicial District is an appropriate and convenient forum for this patent and trademark infringement and unfair competition suit against the Defendant.

16.    It would be unreasonable and unfair for any Defendant to be able to freely take advantage of and purposefully target the vast market within this Judicial District for its infringing products on the one hand, and then contend that it cannot be sued here because a court in this State and this Judicial District cannot exercise personal jurisdiction over it, or that this Judicial District would not be an appropriate venue for the present patent infringement suit.  This is precisely the situation which California's Long Arm Statute and the venue rules as to foreign (alien) corporations are intended to address, and do address, by allowing for personal jurisdiction by this Court over the Defendant and in this venue under these circumstances.

4

## REGISTERED TRADEMARKS-IN-SUIT

17.   On January 28, 2014, the U.S. Patent and Trademark Office ("USPTO") duly and legally issued U.S. Trademark Registration Number 4,473,557 ("the '557 Trademark"). A true and correct copy of the '557 Trademark registration is attached as **Exhibit A**. The '557 Trademark consists of a three-dimensional configuration of the packaging. A copy of the '557 Trademark is reproduced below.



18.   On January 28, 2014, the USPTO duly and legally issued U.S. Trademark Registration Number 4,473,558 ("the '558 Trademark"). A true and correct copy of the '558 Trademark registration is attached as **Exhibit B**. The '558 Trademark consists of a three-dimensional configuration of the packaging. A copy of the '558 Trademark is reproduced below.



**PLAINTIFFS NAIL ALLIANCE, LLC AND NAIL ALLIANCE – NORTH AMERICA, INC. COMPLAINT**

19.    Nail Alliance, LLC is the owner of all right, title, and interest in and to the '557 and '558 Trademarks ("Trademarks-in-Suit"), including the right to prosecute this action and to collective and receive damages for all past, present, and future infringements.  Nail Alliance, LLC has granted a license to Nail Alliance – North America, Inc. to the Trademarks-in-Suit.

## REGISTERED PATENTS-IN-SUIT

20.    On April 3, 2012, the USPTO duly and legally issued U.S. Patent Number D656,824 ("the '824" Patent), entitled "Bottle with Transparent Window." The named inventor of the '824 Patent is Danny Lee Haile.  Danny Lee Haile assigned the entire right, title, and interest in and to the '824 Patent to Nail Alliance, LLC.  A true and correct copy of the '824 Patent is attached hereto as **Exhibit C**.

21.    The '824 Patent discloses and claims the ornamental design for a bottle with transparent window, which is described and shown from multiple perspectives in Figures 1-5 of the '824 Patent, reproduced below.



22.    On September 10, 2013, the USPTO duly and legally issued U.S. Patent Number 8,528,739 ("the '739 Patent"), entitled "Package for Colored Products." The named inventor of the '739 Patent is Danny Lee Haile.  Danny Lee Haile

6

assigned the entire right, title, and interest in and to the '739 Patent to Nail Alliance, LLC.  A true and correct copy of the '739 Patent is attached as **Exhibit D**.

23.   Nail Alliance, LLC is the owner of all right, title, and interest in and to the '824 and '739 Patents (collectively, the "Patents-in-Suit"), including the right to prosecute this action and to collective and receive damages for all past, present, and future infringements.  Nail Alliance, LLC has granted a license to Nail Alliance – North America, Inc. to practice the Patents-in-Suit.

## FACTUAL BACKGROUND

### A.   GELISH® BRAND NAIL PRODUCTS

24.   GELISH brand nail products, including gel polish, foundation, topcoat and other nail care preparations, are known throughout and famous within the nail industry for their high quality, range of colors, durability, ease-of-use, consistency and beauty.

25.   Plaintiffs' principal, Danny Haile, invented the first brush-on, soak-off gel polish, which Nail Alliance began selling in earnest in 2010 under the federally registered trademark "GELISH."  GELISH brand gel polish has the benefits of both a traditional nail polish (vibrant colors and a brush on application and finish) and a hard gel (long lasting wear).

26.   GELISH brand gel polish revolutionized the nail industry.  Prior to Mr. Haile's invention, consumers generally frequented salons on select occasions for pampering or professional treatment.  They normally did not go to salons for the application of a nail polish, for example, which they could apply at home.  Because nail polish only lasted a few days before chipping or cracking, it is prohibitively expensive for most U.S. consumers to frequent a salon just for nail polish.  Moreover, although salons offered alternative and longer lasting products such as acrylics and hard-gels, consumers generally preferred the natural look and convenience of a traditional nail polish.  GELISH brand gel polishes solved these problems for salons and professional nail technicians.

7

27.   GELISH brand products provided salons and professional nail technicians new opportunities to grow their business and expand their services. GELISH brand gel polish, foundation, and topcoat provided nail technicians with new products to use as part of the services they offered to consumers.  For example, because of GELISH brand gel polish, consumers could now frequent salons and obtain a natural, nail-polish look in a convenient finish that would last three to four weeks.  They could obtain vibrant color on a natural nail with a long wear finish that was easier to remove than an acrylic or hard gel.  As a result, GELISH brand products substantially increased salon business and have experienced tremendous commercial success in the United States and around the world.

28.   GELISH brand products have won numerous awards, including new product recognition awards, including the following:

•   *Nails Magazine's* Readers' Choice Awards: Favorite New Product (2010, 2013); Favorite Gel Polish (2012, 2013, 2017); Favorite Base Coat (2012, 2017); Favorite Nail Enhancement (2012, 2013); Favorite Topcoat (2012); Favorite Implementing Tools (2012); Favorite New Product (2017); Favorite Nail Enhancement System (2017);

•   *NailPro's* Readers' Choice Awards:  Best Gel Polish (2013, 2014, 2015, 2016, 2017); Best Brush for Enhancements (2013, 2014, 2015, 2016); Best Nail Treatment (2015); Best Colored Hard Gel (2015); Best New Product (2017);

•   *Beauty Launchpad's* Readers' Choice Awards:  Best Gel Polish (2013, 2014, 2015, 2016, 2017, 2018); Best Nail Care (2016, 2017);

•   *Nails'* Readers' Choice Awards:  Favorite Gel Polish (2011); Favorite New Product (2012, 2013); Favorite Hard Gel (2014);

•   *Pro Esthetic's* Product of the Year (2010) and Most Innovative Nail Product of the Year (2018);

- • *Professional Beauty & Wellness'* Innovative Product of the Year (2011);

- • *Elle Beauty's* IT List (2011);

- • *Pro Hair & Beauty's* Readers' Choice Awards:  Best Gel Product (2014);

- • *Scratch*:  Best Education & Training (2014);

- • *Design Nail* Magazine's Readers' Choice Awards:  Most Innovative New Product (2017); and

- • *The National Beauty Awards*:  Best Hand & Nail Product (2018).

29. GELISH brand products have been a huge commercial success. According to a 2021 Kline Report, Nail Alliance has become the largest privately held manufacturer of professional nail products around the world and second largest manufacturer, overall, exceeding such competitors as Revlon and L'Oréal, among other cosmetic manufacturers.

30. Consumers recognize GELISH brand products by their trademarks and the distinctive trade dress of the GELISH brand bottles.  Nail Alliance's unique, distinct, and well-known GELISH trademarks and trade dress have contributed to making the GELISH brand a commercial success.

31. Upon information and belief, consumers recognize GELISH products by these unique, distinctive, and well-known trademarks, trade dress, and bottle, all of which have acquired secondary meaning, and routinely ask for GELISH brand products by name.

32. The GELISH mark is protected by multiple federal trademark registrations, including U.S. Trademark Registration Nos. 4,096,115 and 3,857,946.

33. The GELISH design and bottle design, which includes a unique three-dimensional configuration and scrollwork pattern is also protected by the Trademarks-in-Suit and Patents-in-Suit.

34.   Nail Alliance, LLC has a license agreement with Nail Alliance – North America, Inc., under which Nail Alliance – North America, Inc. has worldwide rights to the GELISH marks, trade dress and bottle.  Nail Alliance – North America, Inc. has manufactured, distributed and sold high-quality gel polish, foundation and topcoat under the GELISH brand in the GELISH bottle (the "GELISH products").  GELISH products have been sold in distinctive bottles illustrated below (foundation left, gel polish center, topcoat right).



35.   GELISH brand foundation and topcoat are designed to be used in connection with GELISH gel polish (the color of the gel polish is shown through a patent protected transparent window in the GELISH brand bottles).  Foundation is applied before the gel polish, and the topcoat is used after the gel polish is applied, to help obtain the desired long-lasting look and finish.  Exemplary depictions of the GELISH trade dress and bottles used for the GELISH foundation, gel polish, and topcoat are shown above.

36.    Beginning in January 2010, GELISH brand products were sold in Nail Alliance's bottle bearing the registered GELISH marks and trade dress.

37.    In support of its brand, Nail Alliance has spent millions of dollars advertising GELISH brand goods in a wide variety of media, including online, trade shows, trade publications, and industry conventions.  Nail Alliance has emphasized the GELISH brand name, trade dress, and bottles in such advertisements.

38.    As a result of Nail Alliance's advertisement, high quality, distinctive products and third-party publications and recognition, the GELISH marks, including trade dress and bottle, qualify as "famous" as the term is used in 15 U.S.C. § 1125(c)(1) or have acquired secondary meaning.  They are readily identifiable and help customers distinguish Nail Alliance's high quality GELISH products from the goods and sources of origin of others.

39.    The GELISH marks, trade dress and bottle are symbols of the brand's quality, reputation, and goodwill.

40.    Nail Alliance sells GELISH products to professional boutiques, salons, and supply stores throughout the United States and around the world through a network of qualified distributors.  Such professional boutiques, salons and supply stores display the GELISH products for use on end users (*e.g.,* customers of nail salons who purchase a GELISH manicure service).

41.    Nail Alliance does not market to or sell GELISH products directly to end users but are for professional use only, including because of the cost and size of the bottles.  Similarly, Nail Alliance's authorized distributors are restricted in selling GELISH products over the Internet.  Nail Alliance's distribution agreements restrict Internet sales to combat the proliferation of counterfeit products, which have historically been sold over the Internet.

42.    GELISH products are intended for and advertised for professional use only because quality nail products and professional application are important to

avoid risks of harm to consumers.  Cheap, low-quality products and poor unprofessionally trained applications can cause harm to consumers.

43.   GELISH products are designed to cure (harden) in response to LED light.  Hence, many gel polish products are sensitive to one or more wavelengths of light, for example, ultraviolet light.  The premature application of such wavelengths of light can prematurely cure or spoil a gel polish in the bottle.

44.   As part of Nail Alliances' continued improvement in the gel polish industry, Nail Alliance surprisingly discovered that a light-sensitive or light-activated product, for example, a gel polish, can be stored and merchandised in a container, and by the inclusion of a small transparent product viewing area, the product's color can be observed by an end user.  Nail Alliance further identified that the ornamental design of the transparent viewing area is novel.

45.   The GELISH brand bottles are protected by the Patents-in-Suit and incorporate the patented ornamental design and utility of the transparent viewing area in the gel polish bottle.

46.   As a result, the GELISH brand bottles for gel polish are protected by both the Trademarks-in-Suit and the Patents-in-Suit, as well as common law rights against unfair competition.

47.   Nail Alliance monitors and polices the use of the GELISH marks and bottle design and utility.

48.   Nail Alliance has given notice, including to Defendant, pursuant to 15 U.S.C. § 1111 by marking GELISH goods with the ® symbol to notify others that the GELISH marks are the subject of federal trademark registrations.

49.   The Trademarks-in-Suit, bottle, and Patents-in-Suit have never been assigned or licensed to any of the Defendants in this matter.

**B.    DEFENDANTS' SPURIOUS AND INFRINGING ACTIVITIES**

50.   Defendants are manufacturing, purchasing, promoting, distributing, advertising, offering to sell, and/or selling counterfeit, spurious, and/or confusingly

similar products as the GELISH brand products in the United States, including in California.

51.    Defendants have knowledge of Nail Alliance's exclusive patent and trademark rights in and to the GELISH marks and bottle, including their exclusive right to use the GELISH marks and trade dress and the goodwill associated therewith in the United States and around the world.  Notice have been specifically provided to Defendants, including through cease and desist correspondence and numerous take-down requests on Internet platforms.

52.    The infringing products sold by Defendants are confusingly similar and nearly identical in appearance in terms of the trade dress and patented features of genuine GELISH brand products.  Vishine also use a nearly identical trade dress as well as the patented features of the Patents-in-Suit on counterfeit and/or spuriously similar bottles, which include the same or substantially similar artwork, bottle, and bottle designs.

53.    The image below, taken from https://www.amazon.com/Vishine-Gel-Nail-Polish-Starter/dp/B07JDDC866?th=1, illustrates representative imitations from Defendant infringing upon Nail Alliance's intellectual property.  These examples of infringing product are advertised as part of the Vishine Gel Nail Polish Starter Kit. The infringing products include Vishine's "gelpolish" products and associated foundation and topcoats in substantively similar infringing bottles:



**PLAINTIFFS NAIL ALLIANCE, LLC AND NAIL ALLIANCE – NORTH AMERICA, INC. COMPLAINT**

54.    The infringing Vishine product incorporates Nail Alliances' GELISH trade dress and the functional and ornamental features of the Patents-in-Suit through its inclusion of the solid background and scroll work thereon and the inclusion of the transparent window.

55.    Upon information and belief, the Vishine gel polish bottle has a coating intended to protect the gel polish from UV light, *e.g.,* a UV resistant coating.  Upon information and belief, the Vishine bottle further includes a transparent viewing port that does not contain the UV resistant coating.

56.    Vishine has been promoting, distributing, advertising, selling, and/or offering to sell counterfeit and/or spuriously imitations of GELISH brand products utilizing its own respective Internet domain names.

57.    Vishine has made its infringing products available on-line, including from its own website at:

https://web.archive.org/web/20220328131137/https://www.vishine.com/.[1]

58.    In addition, upon information and belief, Vishine is promoting, distributing, advertising, selling, and/or offering to sell counterfeit and/or spurious imitations of GELISH brand products utilizing third party e-commerce websites such as Amazon.com, Walmart.com, eBay.com, and Alibaba.com.

59.    Does 1-10 have been promoting, distributing, advertising, selling, and/or offering to sell counterfeit and/or spurious imitations of GELISH brand products in conspiracy with Defendant and/or by aiding and abetting Defendant's infringing activity, including by utilizing third-party e-commerce websites such as Amazon.com, Walmart.com, eBay.com, and Alibaba.com.

60.    Upon information and belief, Vishine and Does 1-10 have, in concert, been manufacturing, promoting, distributing, advertising, selling, and/or offering to

---

[1]    The Internet Archive WayBackMachine provides additional evidence of the infringing products being offered for sell on Vishine's webpage www.vishine.com.

**PLAINTIFFS NAIL ALLIANCE, LLC AND NAIL ALLIANCE – NORTH AMERICA, INC. COMPLAINT**

sell counterfeit and/or spurious imitations of the GELISH brand gel polish, foundation and topcoat, including but not limited to Vishine products.

61. On information and belief, nail salons in California and throughout the United States have been and are purchasing Vishine's counterfeit and/or spurious imitations of GELISH brand products from Vishine and/or Does 1-10 through third party e-commerce websites.

62. In fact, nail salons are brazenly displaying spurious imitations purchased from Internet marketplaces on walls intermixed with counterfeit GELISH brand products intending to confuse consumers and trade off the GELISH goodwill and reputation.  An example of such a display is shown below:



63. As seen from a where a customer would be standing, neither the counterfeit nor the spurious imitations of GELISH brand gel polish, foundation and topcoat are readily discernable to a customer, and cause and/or are likely to cause actual confusion as to the source or origin of the displayed product.

64.     Because consumers presumably trust their salon and/or nail technician and that they are actually getting what they paid for – an authentic GELISH manicure, they are necessarily confused and the GELISH brand's goodwill and reputation are necessarily diminished by these diverted sales.

65.     Therefore, not only are nail salon owners and nail technicians likely to be confused at the point of sale and at least be influenced by initial interest confusion, but end-users are actually confused believing that they are getting an authentic GELISH manicure when they are not.

66.     Based upon the stolen trade dress and infringed patent design, customers and/or end users actually and/or are likely to confuse the counterfeit and/or spurious Vishine "gelpolish" products with the high quality GELISH brand products, thereby tarnishing Nail Alliance's GELISH brand.

67.     Based on the design of Vishine's bottles and the inclusion of Nail Alliance's trade dress, Defendants are intentionally marking and selling a product designed to imitate or appear confusingly similar to GELISH brand products, both when Vishine's products are advertised and purchased over the Internet and when displayed in a nail salon.

68.     To prevent these salons from purchasing, displaying, advertising, and selling these spurious imitations, Nail Alliance contracted with a brand protection service to contact third party e-commerce websites to take down these infringing products, to no avail, including for example, Amazon.com, Inc.  Not only does the process take time, thus allowing the infringing products to proliferate and injure the GELISH brand, but the platforms do little or nothing to prevent Defendants from reposting the same infringing listings and selling infringing product.  Plaintiff has been informed that absent a court order, they could (or would) not prevent the reoccurring infringing listings and sales, even though representations were made to Nail Alliance to the contrary when they registered with one or more of these platforms to sell authentic GELISH brand products.

69.    With full knowledge of the counterfeit and suspect nature of the products, Vishine and Does 1-10 are manufacturing, using, promoting, selling, and/or otherwise advertising, distributing, and/or offering for sale substantial quantities of such counterfeit product—fully knowing that these products, with their inferior quality, will be mistaken for the genuine high quality of genuine GELISH brand products offered for sale by Nail Alliance.

70.    Defendants' actions are designed to cause, and are causing, actual confusion among consumers, including both end users and professional nail technicians, who are led to believe, and believe, and if Defendants are not enjoined, will continue to believe, that they have purchased or have received, or are receiving, genuine GELISH brand products that originate from and are approved and/or supported by Nail Alliance.

71.    Nail Alliance is suffering irreparable harm due, not only to consumer confusion, but also to, *inter alia*, the cheap/poor quality of the counterfeit product, the lack of quality control and customer support thereof, the loss of control over Nail Alliance's famous GELISH marks and the reputation of GELISH products, and the ongoing disparagement and diminution of the goodwill associated with the GELISH brand.

72.    Defendants' wrongful conduct has caused Nail Alliance damages, the full amount of which will be difficult to calculate but is not less than $2 million. Since the acts of Vishine will continue in the future unless enjoined and restrained, Nail Alliance has no adequate remedy at law.

73.    On or about March 30, 2022, Nail Alliance's representative sent a letter to Vishine explicitly notifying Vishine of the Trademarks-in-Suit and the Patents-in-Suit.  A true and correct copy of the letters are attached as **Exhibit E**.

74.    Although the address was verified through public sources, including the USPTO, neither Nail Alliance nor Nail Alliance's representatives received a response from Vishine.

## COUNT I: TRADE DRESS INFRINGEMENT
## (Against All Defendants)

75.   Plaintiff incorporates by reference the allegations contained in paragraphs 1-74 above as if fully set forth herein.

76.   Plaintiffs own protectable rights in the GELISH marks and trade dress, including the Trademark-in-Suit, which are inherently distinctive and have acquired secondary meaning as a designation of source or origin.

77.   Defendants knowingly and without the consent of Plaintiffs have used in commerce reproductions, counterfeit copies, confusingly similar products and packaging, and nearly identical imitations of Plaintiffs' registered marks and trade dress in connection with the sale, offer for sale, distribution, and/or advertising of goods, which is likely to cause confusion among consumers.

78.   Notwithstanding Plaintiffs' well-known and prior rights in the GELISH marks and trade dress, including the Trademark-in-Suit, Defendants manufacture, distribute, promote, offer for sale, and/or sell spurious imitation products, in or affecting interstate commerce, in direct competition with the sale of genuine GELISH products sold under the Trademarks-in-Suit.

79.   The infringing products trafficked by Defendants are designed to look like GELISH brand products.  The bottles so closely imitate the GELISH trade dress that Defendants' activities are likely to, and are intended to, cause confusion among consumers and have caused actual confusion in the marketplace.

80.   Defendants' unlawful, unauthorized and unlicensed manufacture, promotion, distribution, offer for sale, and sale of infringing product create the express or implied misrepresentation that the product was created, authorized, approved and/or supported by Plaintiffs.

81.   Defendants' activities constitute trade dress infringement in violation of Plaintiffs' rights under 15 U.S.C. § 1114 and have caused and will continue to cause Plaintiffs irreparable harm.

18

82.   The infringing product is generally of inferior quality, lacks the same quality control and customer support as authentic GELISH brand products, and the sale thereof will necessarily damage and dilute the goodwill of Plaintiffs and the GELISH brand, as well as the reputation Nail Alliance has developed in connection with the sale of genuine GELISH brand products.

83.   Plaintiffs have no adequate remedy at law as monetary damages are inadequate to compensate Plaintiffs for the injuries caused by Defendants.

84.   Unless immediately restrained and enjoined by this Court under 15 U.S.C. § 1116(a) and (d) and the equitable powers of this Court, Defendants will persist in their activities and continue to cause Plaintiffs irreparable harm.

85.   Plaintiffs are entitled to injunctive relief, including the seizure of spurious goods.

86.   Plaintiffs have suffered damages, including lost profits, according to proof at trial, but in an amount of not less than $2 million dollars, including by not less than $100,000 in damages per each of the Defendants' unlawful activities.

87.   In addition, and/or in the alternative, Plaintiffs are entitled to disgorge and recover Defendants' profits from their sales of infringing products.

88.   Because of Defendants' infringing activities were willful, malicious and/or fraudulent, and/or because of the exceptional nature of this case, Plaintiffs are entitled to enhanced (or treble) damages as well as an award of costs and reasonable attorneys' fees.

89.   At Plaintiffs' election, in lieu of compensatory damages according to proof, Plaintiffs should be awarded statutory damages from Defendants in an amount not more than $2 million per each colorable imitation of the Trademarks-in-Suit used and product sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

## COUNT II: FALSE DESIGNATION OF ORIGIN
### (Against All Defendants)

90.    Plaintiffs incorporates by reference the allegations contained in paragraphs 1-74 above as if fully set forth herein.

91.    Plaintiffs own protectable rights in the GELISH marks and trade dress, including the Trademark-in-Suit, which are inherently distinctive and have acquired secondary meaning as a designation of source or origin.

92.    Defendants knowingly and without the consent of Plaintiffs have used in commerce reproductions, counterfeit copies, confusingly similar products and packaging, and nearly identical imitations of Plaintiffs' registered marks and trade dress in connection with the sale, offer for sale, distribution, and/or advertising of goods, which is likely to cause confusion among consumers.

93.    Notwithstanding Plaintiffs' well-known and prior rights in the GELISH marks and trade dress, including the Trademark-in-Suit, Defendants manufacture, distribute, promote, offer for sale, and/or sell spurious imitation products, in or affecting interstate commerce, in direct competition with the sale of genuine GELISH products sold under the Trademarks-in-Suit.

94.    The infringing products trafficked by Defendants are designed to look like GELISH brand products.  The bottles so closely imitate the GELISH trade dress that Defendants' activities are likely to, and are intended to, cause confusion among consumers and have caused actual confusion in the marketplace.

95.    By misappropriating and using the GELISH marks, Defendants misrepresent and falsely describes the content, origin, and source of their imitation product in addition to creating a likelihood of and causing actual confusion.

96.    The infringing product is generally of inferior quality, lacks the same quality control and customer support as authentic GELISH brand products, and the sale thereof will necessarily damage and dilute the goodwill of Plaintiffs and the

GELISH brand, as well as the reputation Nail Alliance has developed in connection with the sale of genuine GELISH brand products.

97.   Defendants' unlawful, unauthorized and unlicensed manufacture, promotion, distribution, offer for sale, and sale of infringing product creates the express and implied misrepresentation that the product was created, authorized, approved and/or supported by Plaintiffs.

98.   Defendants' activities violate 15 U.S.C. § 1125(a) in that their use in commerce of the GELISH marks, trade dress and/or bottle, create a false designation of origin.  Defendants' use, manufacture, promotion, distribution, offer to sell, sale, and importation into the United States of infringing products that are confusingly similar to the GELISH marks, bottle, and trade dress infringe Plaintiffs' rights in violation of the Lanham Act and common law.

99.   Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Plaintiffs' trademark and trade dress rights, business, reputation, and goodwill.

100.  Plaintiffs have no adequate remedy at law.

101.  Plaintiffs are entitled to injunctive relief, including the seizure of counterfeit goods.

102.  Plaintiffs have been damaged according to proof at trial but in an amount of not less than $2 million.

103.  Defendants' use of colorable imitations of the GELISH brand bottle has been intentional and willful.  Defendants' bad faith is evidence at least by the striking similarity of the infringing product to the GELISH brand bottle.  Additionally, the use of identical scroll artwork, an identical color scheme, and identical packaging also demonstrate the intentional and willful nature of Defendants' actions.

104.  Because of Defendants' infringing activities were willful, malicious and/or fraudulent, and/or because of the exceptional nature of this case, Plaintiffs

21

are entitled to enhanced (or treble) damages as well as an award of costs and reasonable attorneys' fees.

105.  In lieu of compensatory damages according to proof, Plaintiff should be permitted to seek and/or award statutory damages from each Defendant in an amount of not more than $2 million per each colorable imitation GELISH trade dress used and product sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

## COUNT III: INFRINGEMENT OF THE '824 PATENT
### (Against All Defendants)

106.  Plaintiffs incorporate by reference the allegations contained in paragraphs 1-74 above as if fully set forth herein.

107.  Plaintiffs own the '824 Patent, which claims the following design:



FIG. 1        FIG. 2        FIG. 3

108.  Defendants have directly infringed and continue to infringe the '824 Patent by making, using, testing, selling, licensing, offering for sale within the United States and/or importing into the United States infringing products, including at least Vishine's "gelpolish" bottle depicted below:



**PLAINTIFFS NAIL ALLIANCE, LLC AND NAIL ALLIANCE – NORTH AMERICA, INC. COMPLAINT**

109.  Among other things, Defendants infringe the '824 Patent by making, using, testing, selling, licensing, offering for sale within the United States and/or importing into the United States the Vishine Gel Nail Polish Starter Kit, which includes a bottle with a transparent window identical or substantially the same as the '824 Patent's patented design.

110.  Consumers and end users of bottles, including, for example, nail salons displaying gel polish in the bottles and offering manicure and pedicure services, who use, test, sell, license, offer for sale within the United States and/or import into the United States Vishine's accused products have infringed and continue to infringe the '824 Patent.

111.  Defendants are and have been aware of these activities and infringement.

112.  Defendants have knowingly induced and continue to induce users of its gel polish bottles to infringe the '824 Patent, including by intentionally developing, making, marketing, advertising, and/or providing instruction materials to advertise and/or use its products, including at least the "gelpolish" gel polish, for example, included in the Vishine Gel Nail Polish Starter Kit.

113.  Vishine and Does 1-10 have contributed and continue to contribute to the infringement of the '824 Patent by nail salons who use within the United States and/or import into the United States its products, including at least the "gelpolish" gel polish included in, for example, the Vishine Gel Nail Polish Starter Kit, by providing the necessary marketing, advertising, training, and/or support.  For example, the above-shown design included in the Vishine Gel Nail Polish Starter Kit is a material component of the patented design.  Defendants know and has known that this design is especially made or especially adapted for use in the infringement of the '824 Patent and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

114. Defendants' infringement is and has been willful, deliberate and intention. They had pre-suit knowledge of the '824 Patent due to take down requests and cease and desist correspondence and continued to market and sell the accused products. On information and belief, Defendants' customers and end users have found that the '824 Accused Products are substantially the same as the design claimed in the '824 Patent.

## COUNT IV: INFRINGEMENT OF THE '739 PATENT
## (Against All Defendants)

115. Plaintiff incorporates by reference the allegations contained in paragraphs 1-74 above as if fully set forth herein.

116. Plaintiffs own the '739 Patent.

117. Defendants have directly infringed (literally and/or by the doctrine of equivalents), and continues to directly infringe, at least claim 8 of the '739 Patent by making, using, testing, selling, licensing, and/or offering for sale within the United States, and/or importing into the United States its products, services, methods, and/or systems including, without limitation, the "gelpolish" gel nail polish included in, for example, the Vishine Gel Nail Polish Starter Kit. Defendants are liable for their infringement of the '739 Patent in violation of 35 U.S.C. § 271(a).

118. For example, the accused products all infringe at least claim 8 of the '739 Patent. Claim 8 is reproduced below:

> 8. A cosmetic container for containing a colored photocurable cosmetic product, said container comprising a transparent bottle substantially covered with a coating and having at least one transparent product viewing area adapted to allow the product to show therethrough; wherein the coating substantially reduces transmission of at least one wavelength of light capable of photo-curing said colored cosmetic product that would otherwise pass through the bottle to the contained colored cosmetic product;
>
> wherein said viewing area substantially lacks said coating; and
>
> wherein said colored cosmetic product is a nail polish, nail gel, or a combination or modification thereof.

119.  The accused products are cosmetic containers for containing a gel polish that is a colored photocurable cosmetic product.  *See* **Exhibit F**, p. 1-3 ("6PCS Colors Gel Polish") ("Step 4: Apply the color gel polish, then cure with the nail dryer.").  Upon information and belief, the accused products contain ultraviolet transparent bottles that are substantially covered with a coating and have a small transparent window for a user to see the gel nail polish in the containers, as demonstrated by the small circular transparent window located on the external portion of the bottle and showing the color of the nail polished within the bottle to an end user or customer.  The accused products include photocurable gel nail polish (*see* **Exhibit F**, p. 3 ("Step 4: Apply the color gel polish, then cure with the nail dryer.")); and therefore, upon information and belief, the bottles prevent premature curing of the photocurable gel nail polish.  The accused products further contain a coating covering substantially all of the bottle, except for the transparent window, which reduces transmission of light capable of prematurely curing or spoiling the colored nail polish, as shown by the whitish gray color of the bottles.  As demonstrated by the figures included herein, the accused products include a transparent window for viewing the color of the gel polish contained within the bottle, and the transparent window does not include, or in the alternative substantially lacks, the coating that prevents light that could cure the gel polish.  Finally, the accused products are nail gel polishes.  *See* **Exhibit F**, p. 3 ("6PCS Colors Gel Polish").

120.  Notwithstanding Vishine's knowledge of the '739 Patent and having written notice from Plaintiffs regarding their patent portfolio, and other facts discussed above, Vishine has actively, knowingly, and intentionally induced and continues to induce infringement of at least claim 8 of the '739 Patent, including by intentionally developing, marketing, advertising, manufacturing and/or providing its products, including at least the Vishine Gel Nail Polish Starter Kit with the knowledge (and/or willful blindness) of the infringement and specific intent that

25

third parties, such as customers, will manufacture, sell, offer for sale, and/or use the accused devices in the United States.  For example, Vishine encourage third parties, such as customers and/or distributors, to use and/or sell the Vishine's "gelpolish" nail gel polish, included in, for example, the Vishine Gel Nail Polish Starter Kit, for example, on the websites www.amazon.com and www.alibaba.com.  As a result, third-parties have directly infringed the '739 Patent.

121.  Notwithstanding Does 1-10 knowledge of the '739 Patent and other facts discussed above, Does 1-10 have actively, knowingly, and intentionally induced and continues to induce infringement of at least claim 8 of the '739 Patent, including by intentionally developing, marketing, advertising, manufacturing and/or providing the accused products, including at least Vishine's "gelpolish" gel nail polish products included in, for example, the Vishine Gel Nail Polish Starter Kit with the knowledge (and/or willful blindness) of the infringement and specific intent that third-parties, such as customers, will manufacture, sell, offer for sale, and/or use the accused devices in the United States.  For example, Does 1-10 encourage third-parties, such as customers, to use and/or sell the Vishine Gel Nail Polish Starter Kit, for example, on the websites www.amazon.com and www.alibaba.com.  As a result, third-parties have directly infringed the '739 Patent.

122.  Vishine has contributed to and continues to contribute to the infringement of the '739 Patent by third parties, whose use, sale, and/or offer for sale of its products, including at least the Vishine Gel Nail Polish Starter Kit, directly infringes at least claim 8 of the '739 Patent, by promoting, advertising, manufacturing, and marketing the Vishine Gel Nail Polish Starter Kit, at a minimum, on the websites www.amazon.com and www.alibaba.com, and by providing the necessary equipment and related documentation to third parties to use and/or operate the infringing device alone or with other instrumentalities.

123.  Does 1-10 have contributed to and continues to contribute to the infringement of the '739 Patent by third parties, whose use, sale, and/or offer for

sale of its products, including at least "gelpolish" gel polish included, for example, in the Vishine Gel Nail Polish Starter Kit, directly infringes at least claim 8 of the '739 Patent, by promoting, advertising, manufacturing, and marketing the Vishine Gel Nail Polish Starter Kit, at a minimum, on the websites www.amazon.com and www.alibaba.com, and by providing the necessary equipment and related documentation to third parties to use and/or operate the infringing device alone or with other instrumentalities.

124.  The accused products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

125.  Defendants has deliberately persisted in their respective infringing acts despite knowledge of the '739 Patent, and thus had full knowledge of the risk of infringement.  Despite this risk, Defendants continued and continues to make, use, sell, and/or offer for sale the infringing products in the United States.  As such, the infringement is willful.

## COUNT VI: UNFAIR COMPETITION CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 *et seq*.

126.  Plaintiffs incorporate by reference the allegations contained in paragraphs 1-121 above as if fully set forth herein.

127.  Defendants' wrongful conduct as alleged herein constitutes an unlawful, fraudulent, and/or unfair act(s) or practice(s) within the meaning of California's Unfair Competition Law (Bus. & Prof. Code § 17200).

128.  Defendants' wrongful conduct has caused Plaintiffs to suffer a loss of money or property within the meaning of the statute.

129.  Defendants' wrongful conduct has caused, and is causing, Plaintiffs' to suffer irreparable harm.

130.  Plaintiffs have no adequate remedy at law

131.  Unless immediately restrained and enjoined by this Court, Defendants will persist in their activities, which should be enjoined.

27

132.  Plaintiffs' pray for all equitable relief the Court determines is appropriate, including but not limited to injunctive relief.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for the following relief:

A.    That each defendant, its agents, servants, employees, officers, attorneys, successors, and assigns, and all persons acting in concert or participation with them, be temporarily, preliminarily, and permanently enjoined in this and all other Judicial Districts of the United States from: (i) manufacturing, distributing, selling, offering for sale, holding for sale or advertising any counterfeit, products, merchandise or goods bearing the Trademarks-in-Suit and other indicia of the GELISH trade dress or any colorable variation or imitation thereof; and (ii) representing that any counterfeit products, merchandise or goods manufactured, distributed, sold, held for sale or advertised by them are sponsored or authorized by Nail Alliance;

B.    That the United States Marshal, along with authorized agents of Plaintiffs and/or any persons acting under their supervision, are authorized to seize and impound at verified locations, when the order issues: (a) any and all counterfeit products that each Defendant possesses or attempts to advertise, promote, sell, distribute, or hold for sale, whether or not in the process of manufacture or delivery, (b) any and all labels, packages, wrappings, receptacles, and advertising collateral, the use of which in commerce would constitute trademark infringement and violate the injunction, and (c) any and all evidence of the counterfeiting activity, including but not limited to financial records, business records, shipping records, purchase orders, invoices, computers, storage devices, surveillance recordings, and any other evidence of wrongdoing whether held in electronic or physical format;

C.    That each Defendant, pursuant to 15 U.S.C. § 118, and within seven days of the date of entry of an injunction and notice of the order, deliver up for testing, preservation or destruction (a) any and all counterfeit products that the respective Defendant possesses or attempted to advertise, promote, sell, distribute,

28

or hold for sale, whether or not in the process of manufacture of delivery, (b) any and all labels, packages, wrappings, receptacle, and advertising collateral, the use of which in commerce would constitute trademark infringement and violate the injunction, and (c) any and all evidence of the counterfeiting activity, including but not limited to financial records, business records, shipping records, purchase orders, invoices, computers, storage devices, surveillance recordings, and any other evidence of wrongdoing whether held in electronic or physical format;

D.  That each Defendant be required to account for all nail product bottles acquired and sold in the last three years or any other relevant time period, and pay Plaintiffs for all profits and damages resulting from each Defendant's infringing and counterfeiting activities, and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. § 1117, or, at Plaintiffs' election, that Plaintiffs be awarded statutory damages from each Defendant in an amount not more than $2 million per each counterfeit GELISH trade dress used and product sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act;

E.  A judgment that Vishine directly infringes and has directly infringed the Patents-in-Suit;

F.  A judgement that each of Does 1-10 directly infringes and has directly infringed the Patents-in-Suit;

G.  A judgement that Vishine induces and has induced infringement of the Patents-in-Suit;

H.  A judgement that each of Does 1-10 induces and has induced infringement of the Patents-in-Suit;

I.  A judgment that Vishine contributes to and has contributed to infringement of the Patents-in-Suit;

J.  A judgment that each of Does 1-10 contributes to and has contributed to infringement of the Patents-in-Suit;

K.    An award of damages pursuant to 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of final judgment, with an accounting, as needed;

L.    A judgment that Defendant willfully infringed the Patents-in-Suit and an order trebling Plaintiffs' damages;

M.    An order that Defendant pay to Plaintiffs punitive damages;

N.    An order that Defendant pay to Plaintiffs' pre-judgement interest;

O.    A declaration that this case is exceptional and an order for Defendant pay to Plaintiffs their costs, reasonable attorney's fees, and investigative fees; and

P.    An award of such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a jury trial on issues so triable.

Dated:  May 6, 2022

By:  /s/ *Todd M. Malynn*

Todd M. Malynn (SBN 181595)
Todd.Malynn@BlankRome.com
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

Jonathan W.S. England (*Pro Hac Vice* to be filed)
Jonathan.England@BlankRome.com
1825 Eye Street, NW
Washington, DC 20006
Telephone:  202.420.2200
Facsimile:   202.420.2201

Attorneys for Plaintiffs
Nail Alliance, LLC and
Nail Alliance – North America, Inc.

30